UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| EMILY SHARP RAINS,<br><br>    Plaintiff,<br><br>v.<br><br>WESTMINSTER COLLEGE, a Utah corporation; MELISSA KOERNER, in her official and individual capacities; and RICHARD BADENHAUSEN, in his official and individual capacities,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL (DOC. NO. 32) AND DENYING DEFENDANTS' MOTION TO QUASH SUBPOENA (DOC. NO. 39)**<br><br>Case No. 2:20-cv-00520<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Daphne A. Oberg |

Pro se Plaintiff Emily Sharp Rains brought this action against her former employer, Westminster College, and her former supervisor, Melissa Koerner, following her termination from a faculty position at Westminster College.[1] (*See generally* Second Am. Compl., Doc. No. 62.) Ms. Rains asserts claims for discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and breach of contract, among other claims. (*Id.* ¶¶ 77–87, 98–102.)

Before the court are two motions concerning Defendants' assertion of privilege as to certain documents Ms. Rains seeks in discovery: Ms. Rains' motion to compel production of

---

[1] After the discovery motions addressed in this order were fully briefed, Ms. Rains amended her complaint to add claims against Richard Badenhausen. (*See* Second Am. Compl., Doc. No. 62.) Mr. Badenhausen has filed a motion to dismiss, which remains pending. (Doc. No. 67.) Because Mr. Badenhausen was not a party to the discovery motions at issue, the term "Defendants" as used in this order refers only to Westminster College and Ms. Koerner.

1

documents by Defendants, (Doc. No. 32),[2] and Defendants' motion to quash Ms. Rains' subpoena to Stoel Rives, L.L.P., a nonparty law firm, (Doc. No. 39). At issue are the following documents: (1) an email from Westminster College's president to its general counsel regarding a bias complaint against professor Rick Haskell; and (2) documents related to an investigation of Ms. Rains before her termination, conducted by a Stoel Rives attorney, Matt Durham, at Westminster College's request. Defendants have withheld these documents, and seek to quash Ms. Rains' subpoena to Stoel Rives, based on attorney-client privilege and work-product protection.

Ms. Rains' motion to compel is granted in part and denied in part, and Defendants' motion to quash is denied.[3] Because Defendants have demonstrated the email regarding the Haskell complaint is privileged, Ms. Rains' motion to compel is denied as to this document. But Defendants waived any claim of attorney-client privilege and work-product protection for documents related to the Durham investigation by intentionally disclosing various versions of Mr. Durham's final report. Accordingly, Ms. Rains' motion to compel is granted as to documents related to this investigation, and Defendants' motion to quash the subpoena for documents related to this investigation is denied.

---

[2] The court previously granted this motion in part but reserved ruling on Defendants' claim of privilege. (Doc. No. 55.)

[3] Pursuant to Rule 37-1(b)(5)(B) of the Local Rules of Civil Practice, the court finds oral argument unnecessary and decides the motion based on the parties' written memoranda.

## DISCUSSION

### 1. Haskell Complaint

    a.  <u>Background</u>

In her complaint, Ms. Rains alleges Westminster College professor Rick Haskell "had a reputation on campus for biased treatment of women" and "engaged in such treatment" of her during a faculty meeting. (Second Am. Compl. ¶ 50, Doc. No. 62.) She alleges witnesses to this incident reported it to Westminster College's chief diversity officer and an investigation ensued—but she was never contacted, and Mr. Haskell was later promoted. (*Id.*) In request for production (RFP) 18 of her discovery requests to Defendants, Ms. Rains requested all documents "related to the bias complaint(s) against Rick Haskell." (Ex. B to Mot. to Compel, Second Suppl. Resps. 16, Doc. No. 34.) Defendants initially responded that all responsive documents were protected under the attorney-client privilege. (*Id.*) They later produced two pages of email correspondence between Westminster College's human resources director and Ms. Rains regarding the incident. (*See* Opp'n to Mot. to Compel 2, Doc. No. 40.)

Ms. Rains then filed the instant motion to compel production of responsive documents. (Mot. to Compel, Doc. No. 32.) In their opposition, Defendants represented the only responsive document was "privileged communication" between Westminster College's president and its general counsel, Kathryn Holmes, "discussing the informal complaint against Mr. Haskell, and its resolution." (*Id.*) In a previous order, the court granted Ms. Rains' motion to compel in part, ordering Defendants to conduct a diligent search, to produce all nonprivileged documents responsive to RFP 18, and to provide a sworn statement to Ms. Rains that all such documents had been produced. (Order 9, Doc. No. 55.) The court also ordered Defendants to provide an amended privilege log describing any withheld documents and invited supplemental briefing

3

regarding Defendants' claims of privilege. (*Id.*) Defendants provided an amended privilege log, and both parties filed supplemental briefs. (Doc. Nos. 59 & 60.)

    b. <u>Analysis</u>

In their supplemental brief, Defendants identify the withheld document as a November 29, 2018 email from Westminster College's president to its general counsel. (Defs.' Suppl. Br. 2, Doc. No. 59.) Defendants' amended privilege log describes this document as "[c]orrespondence, discussing potential legal issues relating to allegations against Rick Haskell; [s]ummarizing conversation with Mr. Haskell; [i]dentifying potential resolution to issue; [s]eeking guidance on the same." (*See* Ex. A to Defs.' Suppl. Br., Suppl. Privilege Log 11, Doc. No. 59-1.) Defendants contend this document is attorney-client privileged communication. (Defs.' Suppl. Br. 2, Doc. No. 59.)

In her supplemental brief, Ms. Rains argues Defendants should be compelled to produce "the [b]ias [r]eport, notes, and communications and information related to it." (Pl.'s Suppl. Br. 10–11, Doc. No. 60.) She suggests these documents were transmitted from Westminster College's president to its general counsel, and she argues these documents are not privileged merely because they passed through the attorney's inbox. (*Id.*)

Ms. Rains' argument assumes Defendants are withholding additional documents responsive to RFP 18 beyond the November 29, 2018 email. But no such documents were identified in Defendants' privilege log. Rather, Defendants represent the only responsive document being withheld is the email itself.[4] Thus, the only issue is whether this email is privileged and properly withheld.

---

[4] To the extent other responsive documents exist which are not identified in the privilege log, Defendants must produce them as previously ordered. (*See* Order 9, Doc. No. 55.) This includes

4

Defendants have demonstrated the November 29, 2018 email is privileged under both federal and state law.[5] In the Tenth Circuit, "attorney-client privilege protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor." *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010) (internal quotation marks omitted). Similarly, under Utah law, a party claiming attorney-client privilege must establish: "(1) an attorney-client relationship, (2) the transfer of confidential information, and (3) the purpose of the transfer was to obtain legal advice." *S. Utah Wilderness All. v. Automated Geographic Reference Ctr., Div. of Info. Tech.*, 2008 UT 88, ¶ 33, 200 P.3d 643, 655 (Utah 2008).

The description in Defendants' amended privilege log shows these elements are met. According to the log, Westminster College's president sent the email to its general counsel to seek guidance regarding potential legal issues relating to a complaint against Mr. Haskell. Ms. Rains does not dispute the accuracy of this description. This description is sufficient to show the

---

any attachments to the November 29, 2018 email and any other responsive documents transmitted by Westminster College's president to its general counsel, if they exist.

[5] Ms. Rains brings both federal and state claims, and she does not identify which claims this evidence relates to. Typically, in federal courts, federal common law governs the existence of privilege unless state law supplies the rule of decision as to an element of the claim or defense. Fed. R. Evid. 501; *see also Entrata, Inc. v. Yardi Sys.*, No. 2:15-cv-00102, 2018 U.S. Dist. LEXIS 149239, at *6 (D. Utah Aug. 30, 2018) (unpublished). When privilege is claimed as to evidence relating to both federal and state law claims, "most circuit courts have either held that federal privilege law governs or approved of such an approach without explicitly adopting it." *Entrata, Inc.*, 2018 U.S. Dist. LEXIS 149239, at *6 (internal quotation marks omitted). But the Tenth Circuit takes a different approach, holding where there are federal and state law claims, "[a]s to state causes of action, a federal court should look to state law in deciding privilege questions." *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1551 (10th Cir. 1995). That said, "it appears that the Tenth Circuit has not confronted the issue of which law applies where evidence allegedly subject to a privilege is relevant to both the federal and state-law claims in the case." *Entrata, Inc.*, 2018 U.S. Dist. LEXIS 149239, at *6–7 (internal quotation marks omitted). This issue need not be resolved here because Defendants have demonstrated the email at issue is privileged regardless of which law applies.

email was a confidential attorney-client communication for the purpose of obtaining legal advice. Therefore, Defendants may properly withhold the email based on attorney-client privilege. Ms. Rains' motion to compel is denied as to the November 29, 2018 email.

### 2. Durham Investigation

#### a. Background

Before Ms. Rains was terminated, Westminster College hired an outside investigator, attorney Matt Durham of Stoel Rives, to investigate alleged misconduct by Ms. Rains. (*See* Ex. E to Pl.'s Suppl. Br., Durham Report (Aug. 21, 2018), Doc. No. 60-5.) The investigation focused on Ms. Rains' use of grant funds and her management of a tax clinic. (*Id.* at 1–2.) Ms. Rains alleges this was one of "multiple investigations which were conducted as a pretextual basis for a wrongful termination that Westminster was planning." (Mot. to Compel 2, Doc. No. 32; *see also* Second Am. Compl. ¶¶ 53–54, 56–59, Doc. No. 62.)

Westminster College provided a copy of Mr. Durham's final report to Ms. Rains at the conclusion of the investigation.[6] (*See* Ex. E to Pl.'s Suppl. Br., Durham Report (Aug. 21, 2018), Doc. No. 60-5.) In the report, dated August 21, 2018, Mr. Durham found Ms. Rains knowingly misused grant funds and concluded Westminster College would be justified in terminating her. (*Id.* at 11–13.) The report also notes Westminster College requested the investigation after it "learned of litigation against [Ms.] Rains in another state alleging malpractice, breach of fiduciary duty[,] and violations of state consumer protection laws." (*Id.* at 1.) The report states in a footnote that Ms. Rains "was found liable for breach of fiduciary duty and violation of the

---

[6] As discussed below, Defendants later produced and filed different versions of this report. The version described and cited in this paragraph is the one Ms. Rains indicates she received contemporaneously. (*See* Pl.'s Suppl. Br. 4, Doc. No. 60.)

state Consumer Protection Act," and that Ms. Rains "denies wrongdoing in connection with the matter." (*Id.* at 1 n.2.)

Westminster College's president issued a termination letter to Ms. Rains on October 18, 2018. (Ex. B to Defs.' Suppl. Br., Doc. No. 59-2.) The termination letter references Mr. Durham's investigation and states the president "carefully consider[ed] the investigation report." (*Id.* at 1.) The letter states the president also reviewed records from the Washington state litigation mentioned in the report. (*Id.*) "Based on this information," the president determined Ms. Rains' conduct at issue in the Washington state case was grounds for termination, including "the recent finding by a jury that [Ms. Rains] engaged in an unfair or deceptive practice in violation of the Washington State Consumer Protection Act." (*Id.* at 1–2.)

In RFP 13, Ms. Rains requested documents related to Westminster College's investigations of her. (*See* Ex. B to Mot. to Compel, Second Suppl. Resps. 15, Doc. No. 34.) In response, Defendants produced a different version of Mr. Durham's final report, dated September 12, 2018. (*See* Mot. to Compel 3, Doc. No. 32; Ex. I to Pl.'s Suppl. Br., Durham Report (Sept. 12, 2018), Doc. No. 60-9.) This version contains a footnote regarding the Washington state case which differs from the previously disclosed version, stating: "It appears that [Ms.] Rains was found liable for breach of fiduciary [sic] and that litigation is still pending on the violation of the federal [sic] Consumer Protection Act. [Ms.] Rains denies wrongdoing in connection with this matter." (Ex. I to Pl.'s Suppl. Br., Durham Report (Sept. 12, 2018) 1 n.1, Doc. No. 60-9.)

Ms. Rains then filed the instant motion to compel, seeking all other documents and communications related to Mr. Durham's investigation. (Mot. to Compel 2–3, Doc. No. 32.) In their opposition, Defendants claimed all documents related to Mr. Durham's investigation other

7

than the final report were protected by attorney-client privilege. (Opp'n to Mot. to Compel 3, Doc. No. 40.)

Separately, Ms. Rains issued a subpoena to Stoel Rives seeking "[a]ll documents related to work done by Stoel Rives, Matt Durham[,] and [associate] Michael Menssen in relation to the Investigation."[7] (Ex. A to Mot. to Quash, Doc. No. 39-2 at 4.) The subpoena specifically lists the following categories of documents: contracts identifying the scope of work the investigators were hired to perform; communications with Westminster College employees, agents, and representatives in relation to the work being performed; invoices related to the work performed; documents related to the discussions between the investigators and third parties related to the investigation; and reports, letters, and emails between the investigators and Westminster College. (*Id.* at 4–5.) Defendants moved to quash the subpoena, asserting such documents were protected by attorney-client privilege and the work-product doctrine. (Mot. to Quash, Doc. No. 39.) In response, Ms. Rains argued Defendants waived any claim of privilege or protection relating to the investigation by disclosing the final report to her. (Opp'n to Mot. to Quash 3, Doc. No. 47.)

The court ordered Defendants to provide an amended privilege log and invited supplemental briefing on Defendants' claims of privilege related to Mr. Durham's investigation. (Order 9, Doc. No. 55.) Defendants provided an amended privilege log, and both parties filed supplemental briefs. (Doc. Nos. 59 & 60.)

As an exhibit to their supplemental brief, Defendants filed a third version of Mr. Durham's final report. (Ex. C to Defs.' Suppl. Br., Durham Report (Aug. 21, 2018), Doc. No.

---

[7] The subpoena defines the "Investigation" as "the work performed by [Stoel Rives, Mr. Durham, and Mr. Menssen] in 2018 and any time after, in relation to the Washington Case and the alleged conduct by Emily Rains in relations to her employment with Westminster College." (Ex. A to Mot. to Quash, Doc. No. 39-2 at 3.)

8

59-3.) This version is dated August 21, 2018, like the first version provided to Ms. Rains. (*Id.* at 1.) But the footnote regarding the Washington state case is the same as that in the second version produced in discovery, which was dated September 12, 2018. (*Id.* at 1 n.1.) And unlike the other versions of the report, this version lacks Stoel Rives letterhead. (*Id.* at 1.)

    b.  <u>Documents Identified by Defendants as Privileged</u>

In their supplemental brief, Defendants indicate Mr. Durham and Mr. Menssen exchanged emails, memoranda, and reports with Westminster Colleges' general counsel, Kathryn Holmes, "relating to the same subject matter of the investigation." (Defs.' Suppl. Br. 4, Doc. No. 59.) Defendants claim these communications are protected by attorney-client privilege. (*Id.* at 8.) Defendants' brief identifies and describes these documents as follows:

    a. June 6, 2018: a memorandum from Mr. Durham to Kathryn Holmes analyzing legal issues relating to the employment of Jovana Sisovic (who worked with [Ms.] Rains at the tax clinic) and potential liability arising from the same;

    b. June 12, 2018: a report of Mr. Menssen's interview of Ms. Sisovic;

    c. July 12 and 16, 2018: Correspondence regarding the investigation, discussions of employees to interview; discussions regarding scheduling of interviews (between Mr. Durham and Kathryn Holmes)[;]

    d. July 16–July 20, 2018; July 31, 2018: Updates on the report and a discussion of the judgment in the Washington case against Rains and analyzing the impact of the same, together with a request from Ms. Holmes for analysis on that issue; analysis of issues relating to the tax clinic; and analysis of college policies.

(*Id.* at 4.) These documents are also listed in the amended privilege log. (*See* Ex. A to Defs.' Suppl. Br., Suppl. Privilege Log 9–11, Doc. No. 59-1.)

9

Defendants' amended privilege log also identifies several additional documents, not discussed in the supplemental brief, which appear related to the Durham investigation and are withheld based on attorney-client privilege:

- June 13, 2018: A memorandum by Ms. Holmes for her file, "[a]nalyzing legal issues; [i]dentifying concerns raised by [o]utside [c]ounsel's reports (Durham and Menssen); [and] [o]utlining strategy moving forward." (Ex. A to Defs.' Suppl. Br., Suppl. Privilege Log 9, Doc. No. 59-1.)
- July 25, 2018: Correspondence from Mr. Durham to Ms. Holmes "relating to interpretation of documentation and policies relating to donors as applied to [the tax] clinic evaluation." (*Id.* at 10.)
- August 21, 2018: "Correspondence, [r]eport; [r]eport of Matt Durham regarding misconduct allegations relating to handling of funds and donation; [c]ounselling [sic] on appropriate responses in light of findings," from Mr. Durham to Ms. Holmes. (*Id.* at 11.)

c. Analysis

Defendants claim all communications between the outside investigators and Westminster College's general counsel, other than Mr. Durham's final report, are protected by attorney-client privilege. (Defs.' Suppl. Br. 8, Doc. No. 59.) They also contend disclosure of the final report to Ms. Rains did not operate as a subject-matter waiver of privilege related to the Durham investigation. (*Id.* at 8–9.)

Ms. Rains argues documents and communications related to the investigation are not privileged because the investigation was conducted as a business procedure—as part of the termination process outlined in the faculty manual. (Pl.'s Suppl. Br. 5, 8, Doc. No. 60.) She also

contends Defendants waived any claim of privilege related to the investigation by intentionally disclosing the final report. (*Id.* at 5, 8–9; *see also* Mot. to Compel 3, Doc. No. 32.)

It is unnecessary to determine whether the communications at issue are privileged. Even assuming attorney-client privilege applies, Defendants waived the privilege by intentionally disclosing various versions of Mr. Durham's final report to Ms. Rains.

Rule 502(a) of the Federal Rules of Evidence governs waiver resulting from disclosure of communications and information covered by attorney-client privilege and work-product protection in federal proceedings. It provides:

> When the disclosure is made in a federal proceeding . . . , the waiver extends to an undisclosed communication or information in a federal or state proceeding only if:
> (1) the waiver is intentional;
> (2) the disclosed and undisclosed communications or information concern the same subject matter; and
> (3) they ought in fairness to be considered together.

Fed. R. Evid. 502(a). The advisory committee's note to Rule 502(a) refers to this as a "subject matter waiver" of attorney-client privilege. Fed. R. Evid. 502 advisory committee's note to subdivision (a).

By its terms, Rule 502(a) applies only to disclosures made in federal proceedings. It applies to the second and third versions of the report, which were disclosed during discovery in this case. But the first version of the report was disclosed to Ms. Rains before her termination, outside the scope of a federal proceeding. Thus, Rule 502(a) does not, on its face, govern the first disclosure. Nevertheless, the rule provides useful guidance for considering whether this first disclosure, in addition to the others, operated as a subject-matter waiver. *See Mills v. Iowa*, 285 F.R.D. 411, 416 (S.D. Iowa 2012) (applying Rule 502 as an "appropriate framework for

guidance" in determining whether a disclosure made before a federal proceeding commenced resulted in subject-matter waiver).

The advisory committee's note to Rule 502(a) explains "subject matter waiver (of either privilege or work product) is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." Fed. R. Evid. 502 advisory committee's note to subdivision (a). Thus, according to the advisory committee, "subject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner." (*Id.*)

Relying on the advisory note, Defendants argue there can be no subject-matter waiver under Rule 502(a) unless a party "intentionally puts protected information into the litigation in a selective, misleading and unfair manner." But other courts have rejected this notion, noting this requirement does not appear in the text of the rule itself. *E.g.*, *Mills*, 285 F.R.D. at 416 ("[T]he Advisory Committee notes should not be taken to mean that in addition to a waiver being intentional, it must also be made in a selective, misleading and unfair manner for a subject matter waiver to result." (internal quotation marks omitted)); *Bear Republic Brewing Co. v. Cent. City Brewing Co.*, 275 F.R.D. 43, 48 (D. Mass. 2011). Instead, these courts have treated a party's disclosure of privileged matter "in a selective, misleading and unfair manner" as relevant to the fairness inquiry under the third element of Rule 502(a), but not essential under the plain language of the rule. *Mills*, 285 F.R.D. at 416; *Bear Republic Brewing Co.*, 275 F.R.D. at 48. This is a reasonable approach. Accordingly, this portion of the advisory committee's note is considered as relevant to the fairness element rather than as a separate requirement for subject-matter waiver.

Turning to the first element, Defendants waived attorney-client privilege for Mr. Durham's final report by intentionally disclosing various versions of it to Ms. Rains. The report was a communication from Mr. Durham to Westminster College's general counsel providing legal advice regarding whether Westminster College would be justified in terminating Ms. Rains. By disclosing this communication to Ms. Rains as part of her termination process, Westminster College intentionally waived attorney-client privilege for the report. Similarly, Defendants intentionally waived privilege by disclosing different versions of the report in this litigation.[8] Thus, the first element is met.

As for the second element, Defendants concede the undisclosed communications on June 6, June 12, July 12, July 16–20, and July 31, 2018, concern the same subject matter as the disclosed final report. (Defs.' Suppl. Br. 4, Doc. No. 59.) Additionally, as noted above, three other withheld documents listed in the privilege log concern the same subject matter, based on Defendants' descriptions of them:

- the June 13, 2018 memorandum by Ms. Holmes identifying concerns raised by Mr. Durham and Mr. Menssen's reports;
- the July 25, 2018 correspondence from Mr. Durham to Ms. Holmes "relating to interpretation of documentation and policies relating to donors as applied to [the tax] clinic evaluation"; and
- the August 21, 2018 correspondence and report from Mr. Durham to Ms. Holmes concerning the misconduct allegations against Ms. Rains.

---

[8] Defendants argue privilege is not waived by disclosure of documents which Ms. Rains already possessed. But the versions of the report disclosed in this litigation differed from the version previously disclosed to Ms. Rains, as described above. Moreover, Ms. Rains possessed the first version of the report only because Westminster College disclosed it to her.

13

(*See* Ex. A to Defs.' Suppl. Br., Suppl. Privilege Log 9–11, Doc. No. 59-1.)  Thus, the second element is met for these documents.

Under the third element, these undisclosed documents "ought in fairness to be considered together" with the disclosed versions of the final report.  *See* Fed. R. Evid. 502(a)(3).  As an initial matter, the withheld report dated August 21, 2018 bears the same date as two disclosed versions of Mr. Durham's final report.  To the extent any additional versions of this report exist which have not been disclosed, fairness dictates they must also be disclosed.  Ms. Rains' termination letter expressly states Westminster College's president considered Mr. Durham's report in deciding to terminate her.  And Defendants offer no justification for withholding any additional versions when three versions (including two with the same date) were disclosed.  All versions of this report must be produced.

Fairness also dictates the other undisclosed documents relating to the Durham investigation should be considered together with the disclosed reports.  Defendants argue they gain no advantage in this litigation by withholding these documents because the stated reason for Ms. Rains' termination was her conduct in the Washington case—not misuse of grant funds, which was the focus of Mr. Durham's report. (Defs.' Suppl. Br. 9, Doc. No. 59.)  This argument is unpersuasive for several reasons.  First, the disclosed reports address the Washington case, with different versions providing differing information about the status of that case—even among versions with the same date.  And, as noted, Ms. Rains' termination letter lists Mr. Durham's report among the information Westminster College's president relied on in deciding to terminate her.  It is unclear which version is referenced in the termination letter, or how multiple versions of the final report came to exist.  The communications between the investigators and Westminster College, and related memoranda, could shed light on these questions.  Where

14

Westminster College relied on the report in terminating Ms. Rains but disclosed differing versions of the report, it would be fundamentally unfair to allow Defendants to withhold communications which could shed light on how these versions came to exist, which version(s) Westminster College relied on, and the role of the investigation in Ms. Rains' termination. This information is relevant to central issues in this case, including whether Westminster College's stated reason for terminating Ms. Rains was legitimate or a pretext for discrimination.

Under these circumstances, Defendants' disclosure of various versions of the final report operates as a subject-matter waiver of attorney-client privilege for documents related to the Durham investigation, including the communications and memoranda listed in Defendants' amended privilege log.[9] Accordingly, Ms. Rains' motion to compel is granted as to these documents.

The scope of this waiver also extends to the categories of documents listed in Ms. Rains' subpoena to Stoel Rives. Ms. Rains requests all documents related to the investigators' work on the investigation, including contracts identifying the scope of the investigation, communications with Westminster College employees and agents regarding the investigation, invoices regarding work performed, and documents related to discussions with third parties about the investigation. Defendants argue these documents are protected by attorney-client privilege and/or work-product protection. (Mot. to Quash, Doc. No. 39.) But these documents concern the same subject matter as the disclosed reports, and they ought in fairness to be considered together with the

---

[9] Defendants' amended privilege log indicates some of these documents are also withheld under the work-product doctrine. But Defendants do not address work-product protection in their opposition to the motion to compel or in their supplemental brief. Thus, they have not demonstrated the work-product doctrine applies to these documents. Regardless, Rule 502(a) applies the same standard to waiver of attorney-client privilege and work-product protection. Accordingly, any work-product protection is waived for the same reasons and to the same extent as attorney-client privilege.

reports, for reasons similar to those set forth above.  The subpoenaed documents could shed light on the various versions of the final report and what information was considered in the termination decision.  For these reasons, Defendants' subject-matter waiver of privilege and work-product protection related to the Durham investigation applies to subpoenaed documents.  Defendants' motion to quash the subpoena to Stoel Rives is denied.

### 3.  Other Privilege Log Issues

In her supplemental brief, Ms. Rains argues communications listed in the privilege log involving Curtis Ryan are not privileged.  (Pl.'s Suppl. Br. 5, Doc. No. 60.)  Although the privilege log identifies Mr. Ryan as an attorney, (*see* Ex. A. to Defs.' Suppl. Br. 8, Doc. No. 59-1), Ms. Rains asserts he is not an attorney, (Pl.'s Suppl. Br. 5, Doc. No. 60).  She also argues these communications related to either the Durham investigation or another investigation conducted by her supervisor.  (*Id.*)

Because Defendants have had no opportunity to respond to these arguments, there is an inadequate record on which to determine whether the communications involving Mr. Ryan are properly withheld.  From the privilege log, it is unclear whether these communications related to the Durham investigation, and no evidence has been submitted regarding whether Mr. Ryan is an attorney.  Therefore, Ms. Rains' motion to compel is denied without prejudice as it relates to the withheld communications involving Mr. Ryan.  The parties should meet and confer on this issue and, if a dispute remains, Ms. Rains may file a new motion.

### 4.  Request for *In* Camera Review

Ms. Rains' motion to compel requests *in camera* review of all documents listed in Defendants' privilege log.  (Mot. to Compel 1, Doc. No. 32.)  With the exception of the dispute regarding Curtis Ryan, which was not fully briefed, the disputes regarding privilege and work-

product protection can be resolved based on the descriptions in the privilege log and the parties' briefing, as set forth above. Therefore, *in camera* review is unnecessary. *See Deffenbaugh Indus. v. Unified Gov't of Wyandotte Cnty.*, No. 20-2204-JTM-KGG, 2021 U.S. Dist. LEXIS 79243, at *8–9 (D. Kan. Apr. 26, 2021) (unpublished) ("There is no basis for the [c]ourt to conduct an *in camera* review in situations wherein the privilege log at issue provides sufficient description of the documents withheld . . . and the underlying dispute comes down to whether the privileges apply." (internal quotation marks omitted)). Accordingly, this request is denied.

## CONCLUSION

Ms. Rains' motion to compel (Doc. No. 32) is granted in part and denied in part, and Defendants' motion to quash (Doc. No. 39) is denied. Because Defendants have demonstrated the email regarding the Haskell complaint is privileged, Ms. Rains' motion to compel is denied as to this document. But Defendants waived attorney-client privilege and work-product protection for documents related to the Durham investigation by intentionally disclosing various versions of Mr. Durham's final report. Accordingly, Ms. Rains' motion to compel is granted as to withheld documents related to this investigation. Defendants must produce all documents related to this investigation within fourteen days. Defendants' motion to quash the subpoena for documents related to this investigation is denied.

DATED this 9th day of September, 2022.

BY THE COURT:

*Daphne A. Oberg*
Daphne A. Oberg
United States Magistrate Judge