UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| EMILY SHARP RAINS,<br><br>           Plaintiff,<br><br>v.<br><br>WESTMINSTER COLLEGE and MELISSA KOERNER,<br><br>           Defendants. | **MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION REQUESTING SANCTIONS FOR SPOLIATION (DOC. NO. 117)**<br><br>Case No. 2:20-cv-00520<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Daphne A. Oberg |

Pro se plaintiff Emily Rains has filed a motion requesting sanctions for spoliation of evidence.[1] Ms. Rains seeks sanctions in the form of a default judgment against the defendants or, in the alternative, an adverse inference that the allegedly spoliated evidence was unfavorable to them.[2] Defendants Westminster College and Melissa Koerner (collectively, the "Westminster Defendants") oppose the motion, arguing Ms. Rains fails to provide evidence supporting her allegations of spoliation and fails to state a proper basis for sanctions.[3] They also argue Ms. Rains is barred from seeking sanctions due to her failure to comply with the court's October 20, 2022 discovery order, which required Ms. Rains give notice of all outstanding written discovery issues she intended to pursue by October 28, 2022.[4]

---

[1] ("Mot.," Doc. No. 117.)

[2] (*Id.* at 4.)

[3] (*See* Defs.' Opp'n to Pl.'s Short Form Mot. Req. Sanctions for Spoliation ("Opp'n"), Doc. No. 118

[4] (*Id.*; *see also* Order Granting Pl.'s Mot. to Extend Disc. Deadlines, Den. Defs.' Mot. to Strike Dep. Notices 6, Doc. No. 103.)

Where Ms. Rains has failed to establish the relevant parties had any duty to preserve the allegedly spoliated evidence, and where several of Ms. Rains' arguments reflect routine discovery disputes rather than demonstrating spoliation, Ms. Rains has not met her burden.[5] Accordingly, sanctions are unwarranted and the motion[6] is denied.[7]

## BACKGROUND

Ms. Rains, proceeding pro se, brought this action against her former employer, Westminster College, and Westminster employees Melissa Koerner and Richard Badenhausen, following her termination from a faculty position at Westminster College.[8] Ms. Rains worked for Westminster College from August 2013 until her termination on October 18, 2018.[9] Before hiring Ms. Rains, Westminster conducted a background check on her.[10] Then, in July 2018, Westminster hired an outside investigator, Matt Durham, an attorney at the firm of Stoel Rives,

---

[5] *See Town & Country Bank, Inc. v. State Auto Prop. & Cas. Ins. Co.*, No. 2:12-cv-957, 2014 U.S. Dist. LEXIS 17882, at *4 (D. Utah Feb. 6, 2014) (unpublished) (noting the movant must prove, by a preponderance of the evidence, that evidence was destroyed or not preserved).

[6] (Doc. No. 117.)

[7] Oral argument is unnecessary; this decision is based on the parties' written memoranda. *See* DUCivR 7-1(g).

[8] (*See generally* Second Am. Compl., Doc. No. 62.) Dr. Badenhausen has since been dismissed from this action. (*See* R. & R. to Grant Def. Richard Badenhausen's Rule 12(b)(6) Mot. to Dismiss, Doc. No. 109; Order Adopting R. & R., Doc. No. 111.)

[9] (*See* Second Am. Compl. ¶ 8, Doc. No. 62.)

[10] (*See id.* ¶ 11; Answer to Second Am. Compl. ¶ 11, Doc. No. 68; Ex. D to Mot., Def. Westminster College's Suppl. Resps. to Pl.'s First Set of Reqs. for Admission 4, Doc. No. 117-4.)

to investigate alleged misconduct by Ms. Rains.[11]  Ms. Rains claims this was but one of multiple investigations conducted as pretext for her wrongful termination.[12]

Ms. Rains originally brought this action against the Westminster Defendants in Utah state court in June 2020, and the Westminster Defendants removed the case to federal court.[13]  Ms. Rains asserts claims for discrimination and retaliation under Title VII of the Civil Rights Act of 1964,[14] breach of contract, and defamation, among other claims.[15]

On October 14, 2020, shortly after the case was removed to federal court, the court set discovery deadlines.[16]  Discovery disputes almost immediately arose between the parties and have continued with some frequency.  In part due to the numerous discovery motions filed throughout the course of this litigation, discovery has been particularly protracted in this case.  Fact discovery, which was originally set to close on September 30, 2021, only recently closed on March 3, 2023, but will be reopened and extended for certain depositions consistent with the court's latest discovery order.[17]

---

[11] (*See* Second Am. Compl. ¶ 57, Doc. No. 62.)

[12] (*See id.* ¶¶ 22–23, 53–54, 56–59.)

[13] (*See* Notice of Removal, Doc. No. 8 (noting the case was originally filed in June 2020).)

[14] 42 U.S.C. § 2000e *et seq*.

[15] (*See* Second Am. Compl. ¶¶ 77–87, 98–102, 117–28, Doc. No. 62.)

[16] (*See* Scheduling Order, Doc. No. 25.)

[17] (*See* Scheduling Order, Doc. No. 25; Am. Scheduling Order, Doc. No. 104; Mem. Decision and Order Den. Defs.' Mot. to Strike Dep. Notices, Doc. No. 119 (ordering the parties to schedule certain depositions and propose an amended scheduling order because fact discovery closed before the order was issued).)

Ms. Rains filed this sanctions motion on March 3, 2023, alleging the Westminster Defendants spoliated evidence on several occasions and seeking sanctions in the form of a default judgment against the Westminster Defendants or an adverse inference that the allegedly spoliated evidence was unfavorable to them.[18]

## LEGAL STANDARDS

"Spoliation is the destruction or significant alteration of evidence . . . or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."[19] Spoliation is only at issue where the offending party has a duty to preserve the evidence.[20] The burden is on the moving party to establish, by a preponderance of the evidence, each element of spoliation, as outlined below.[21]

1. <u>Duty to Preserve</u>

The duty to preserve evidence arises when a litigant knows or should know litigation is imminent.[22] This duty is the same regardless of whether the evidence consists of hard copy documents or electronically stored information ("ESI").[23] Once a party has a duty to preserve,

---

[18] (*See* Mot., Doc. No. 117.)

[19] *Xyngular Corp. v. Schenkel*, 200 F. Supp. 3d 1273, 1309 (D. Utah 2016) (internal quotation marks omitted); *see also Mglej v. Gardner*, No. 2:13-cv-00713, 2021 U.S. Dist. LEXIS 163209, at *4 (D. Utah Aug. 27, 2021) (unpublished).

[20] *See Xyngular Corp.*, 200 F. Supp. 3d at 1309.

[21] *See Town & Country Bank, Inc.*, 2014 U.S. Dist. LEXIS 17882, at *4.

[22] *See Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007).

[23] *See Russell v. Nebo Sch. Dist.*, No. 2:16-cv-00273, 2018 U.S. Dist. LEXIS 166491, at *5–6 (D. Utah Sept. 26, 2018) (unpublished) ("Rule 37(e) does not alter existing federal law concerning when the duty to preserve attaches.").

4

the duty "continues throughout the litigation, and a party cannot continue its routine procedure of destroying relevant evidence."[24]

2. Spoliation Sanctions

Both hard copy documents and ESI are at issue in Ms. Rains' motion, and each implicates a different standard for sanctions. For hard copy documents, the court may sanction spoliation pursuant to its "inherent power to impose sanctions,"[25] when "the adverse party was prejudiced by the destruction of the evidence."[26] The court has "broad discretion to fashion an appropriate sanction depending on the facts and circumstances of each case."[27] Such sanctions may include an award of attorneys' fees, exclusion of a witness, suppression of evidence, an adverse inference, or dismissal.[28] However, imposition of a default judgment or adverse inference as a sanction requires a showing of bad faith, not just negligence.[29]

Rule 37(e) of the Federal Rules of Civil Procedure governs spoliation sanctions for ESI. Pursuant to Rule 37(e), if ESI "is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," the court may award sanctions.[30] Specifically, the court:

---

[24] *Andalam v. Trizetto Grp., Inc.*, No. 12-cv-01679, 2013 U.S. Dist. LEXIS 164970, at *7 (D. Colo. Nov. 19, 2013) (unpublished).

[25] *Id.* at *7–8 (internal quotation marks omitted).

[26] *Burlington N. & Santa Fe Ry. Co.*, 505 F.3d at 1032.

[27] *Pepe v. Casa Blanca Inn & Suites LLC*, No. 18-cv-476, 2020 U.S. Dist. LEXIS 161469, at *6 (D.N.M. Apr. 10, 2020) (unpublished).

[28] *See id.*

[29] *See Jones v. Norton*, 809 F.3d 564, 580 (10th Cir. 2015).

[30] Fed. R. Civ. P. 37(e).

> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> (A) presume that the lost information was unfavorable to the party;
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> (C) dismiss the action or enter a default judgment.[31]

## ANALYSIS

Ms. Rains' motion is based on four incidents of alleged spoliation; each is addressed in turn. Where Ms. Rains fails to demonstrate spoliation occurred and fails to show a duty to preserve existed, the court does not consider whether spoliation sanctions are warranted.

1. Evidence Associated with the Durham Investigation and Report

First, Ms. Rains contends evidence associated with Mr. Durham's investigation and report was spoliated.[32] She relies on emails from August 9, 2018, between Mr. Durham and Kathryn Holmes, Westminster College's general counsel.[33] Ms. Rains contends these emails show "[Mr.] Durham was directed to recommend termination and admitted intentionally withholding information from his report."[34] According to Ms. Rains, this proves "the investigation and termination were pretextual."[35] Ms. Rains also contends Mr. Durham "claims

---

[31] *Id.*

[32] (*See* Mot. 2, Doc. No 117.)

[33] (*See* Ex. 2 to Mot., Email from Kathryn Holmes to Matt Durham (Aug. 9, 2018), Doc. No. 117-2; Ex. 3 to Mot., Email from Matt Durham to Kathryn Holmes (Aug. 9, 2018), Doc. No. 117-3.)

[34] (Mot. 2, Doc. No 117; Ex. 2 to Mot., Email from Kathryn Holmes to Matt Durham (Aug. 9, 2018), Doc. No. 117-2; Ex. 3 to Mot., Email from Matt Durham to Kathryn Holmes (Aug. 9, 2018), Doc. No. 117-3.)

[35] (Mot. 2, Doc. No 117.)

6

all physical documents related to this case have disappeared," including notes taken during his interviews, which "contain facts that he did not put into his report."[36]

The Westminster Defendants counter, arguing the emails only address "the contents of the report Mr. Durham prepared," and contain "no direction to suppress or destroy evidence, nor any indication that evidence was suppressed."[37] The Westminster Defendants contend "[w]hether evidence was featured on a report has no bearing on whether it was preserved."[38] They also argue there is no evidence Mr. Durham lost key information, no evidence they bear culpability for Mr. Durham's actions, and no evidence the information sought is relevant to the case.[39]

At the outset, the contents of the emails between Ms. Holmes and Mr. Durham differ from Ms. Rains' description. In her email, Ms. Holmes states in relevant part, "we want you to make a recommendation on the employment action that should be taken. It was our intention to share your report and recommendation to [Ms. Rains] and the committee if she chooses to appeal."[40] In his reply, Mr. Durham states:

> Attached for your review is a draft of the report regarding Emily Rains. As you will see, I have still included a[] privilege legend, until we make a final decision about privilege. In addition, you will also notice that I have cited to specific

---

[36] (Mot. 3, Doc. No. 117 (citing Ex. 2 to Mot., Email from Kathryn Holmes to Matt Durham (Aug. 9, 2018), Doc. No. 117-2).)

[37] (Opp'n 3, Doc. No. 118.)

[38] (*Id.*)

[39] (*Id.*)

[40] (Ex. 2 to Mot., Email from Kathryn Holmes to Matt Durham (Aug. 9, 2018), Doc. No. 117-2.)

7

> witness[es] quite sparingly, on the assumption that this might go to Emily at some point. I can beef up the attribution if you would like.[41]

Thus, Ms. Holmes' emails do not direct termination, but simply ask for a recommendation regarding employment action.

Additionally, a decision to omit certain information from a report does not necessarily amount to spoliation. Spoliation is the destruction, significant alteration, or failure to preserve evidence.[42] Even assuming Mr. Durham withheld information from his report,[43] this does not amount to spoliation. Withholding information may constitute grounds for filing a motion to compel but, without more, cannot justify sanctions for spoliation.[44] Where Ms. Rains chose not to file a motion to compel, no discovery dispute regarding this evidence has been raised or developed—and Ms. Rains provides no legal authority supporting sanctions in this context.[45]

---

[41] (Ex. 3 to Mot., Email from Matt Durham to Kathryn Holmes (Aug. 9, 2018), Doc. No. 117-3.)

[42] *See Xyngular Corp.*, 200 F. Supp. 3d at 1309; *Mglej*, 2021 U.S. Dist. LEXIS 163209, at *4.

[43] (*See* Mot. 2, Doc. No 117.)

[44] Previously, the court ordered Ms. Rains to "provide a written list of all outstanding written discovery issues she intend[ed] to pursue, including any discovery responses which she contends are deficient, and any responsive documents she contends have not been produced," by October 28, 2022. (Order Granting Pl.'s Mot. to Extend Disc. Deadlines, Den. Defs.' Mot. to Strike Dep. Notices 6, Doc. No. 103.) In preparing this list, Ms. Rains was told to "consider the requirements of the local rules to provide a 'prompt written communication' identifying discovery deficiencies and to file a short form discovery motion within forty-five days thereafter." (*Id.*) The Westminster Defendants argue the relief sought by Ms. Rains in her current motion is barred because she failed to provide a list of deficiencies until January 9, 2023. (Opp'n 2, Doc. No. 118.) Where the instant motion seeks sanctions for spoliation rather than relief for deficient discovery responses, this argument is unavailing. Spoliation is a separate issue. Nonetheless, claims of spoliation may not be used to bring otherwise untimely discovery disputes before the court.

[45] *See COP Coal Dev. Co. v. Rushton*, No. 2:10-cv-39, 2013 U.S. Dist. LEXIS 11239, at *14 (D. Utah Jan. 28, 2013) (unpublished) ("To obtain sanctions under Rule 37(b) or (d), a party must first seek to confer in good faith with the opposing party and file a motion to compel.").

Further, Ms. Rains has failed to demonstrate the Westminster Defendants or Mr. Durham had a duty to preserve the evidence withheld from the Durham report, as next addressed.

    a. *Duty to Preserve*

Spoliation is only at issue where the offending party has a duty to preserve the evidence.[46] With respect to third parties, the general rule is that absent some special relationship arising from agreement, contract, statute, or other special circumstance, the duty to preserve evidence applies only to parties to the litigation, not nonparties.[47] Mr. Durham is not a party to this litigation and Ms. Rains has not alleged the existence of any special relationship between Mr. Durham and the Westminster Defendants. As such, Mr. Durham had no obligation to preserve information omitted from his report, or physical documents and notes associated with his investigation, at any point in time.

As for the Westminster Defendants, a "threshold inquiry in determining if spoliation is applicable to a particular case is whether the party so accused had control over the evidence that was lost or destroyed."[48] Ms. Rains provides no evidence or argument that the information allegedly omitted from Mr. Durham's report (or physical documents from his investigation) were ever in the Westminster Defendants' control. Accordingly, Ms. Rains has failed to establish the Westminster Defendants had any duty to preserve this information.

---

[46] *See Xyngular Corp.*, 200 F. Supp. 3d at 1309.

[47] *See Pettit v. Smith*, 45 F. Supp. 3d 1099, 1106 (D. Ariz. 2014) (noting "the duty to preserve evidence generally applies only to parties" absent a "special relationship" or duty mandating otherwise); *Hogan v. Raymond Corp.*, 777 F. Supp. 2d 906, 918 (W.D. Pa. 2011) ("Typically th[e] duty [to preserve] is applied only to the parties to the litigation, not to third parties."); *see also Jones v. Norton*, 809 F.3d 564, 581 (10th Cir. 2015) (refusing to subject nonparty individuals to spoliation sanctions).

[48] *Pinto v. Warn Indus.*, No. 14-911 SCY/KBM, 2015 U.S. Dist. LEXIS 183200, at *3–4, (D.N.M. June 22, 2015) (unpublished).

Where Ms. Rains has failed to establish Mr. Durham or the Westminster Defendants had a duty to preserve information allegedly withheld from Mr. Durham's report or physical documents and notes associated with his investigation, no further analysis of this incident of alleged spoliation is needed.

2. <u>Ms. Rains' Background Check</u>

Next, Ms. Rains alleges the Westminster Defendants never produced her background check, despite certifying they performed one before hiring her.[49] Ms. Rains contends Ms. Holmes testified at her deposition that "[Westminster] College did not locate the background check, or take any action to identify/contact either the person who requested the background check or the company that performed it."[50] Ms. Rains argues this constitutes spoliation.

In opposition, the Westminster Defendants assert Ms. Holmes inquired into Ms. Rains' background check "but was unable to identify what company performed it."[51] They argue Westminster College's inability to locate the background check report is not spoliation.[52] In support of this premise, the Westminster Defendants provided a declaration from David Perry (Senior Director of Institutional Research for the Office of the Provost at Westminster College).[53] Mr. Perry attested that when Ms. Rains was hired, Westminster College used "third party vendors to conduct background checks of prospective faculty members."[54] Mr. Perry

---

[49] (Mot. 2, Doc. No. 117.)

[50] (*Id.*)

[51] (Opp'n 2, Doc. No. 118.)

[52] (*Id.* at 3.)

[53] (*See* Ex. 3 to Opp'n, Decl. of David Perry ("Perry Decl."), Doc. No. 118-3.)

[54] (*Id.* ¶ 5.)

averred that "any decision as to whether to keep" a background check report "would have been made at the time the check was completed"—such as when Ms. Rains was hired in 2013.[55]

Ms. Rains' characterization of Ms. Holmes' deposition testimony is inaccurate; Ms. Holmes testified she attempted to locate the background check.[56] This contradicts Ms. Rains' assertion that the Westminster Defendants "never produced," "did not locate," and "t[ook] no action to identify" the background check.[57] Moreover, Ms. Rains should have raised any claims of failure to produce in a motion to compel rather than a motion seeking sanctions. Because she

---

[55] (Id. ¶ 7.)

[56] (See Ex. 2 to Opp'n, Dep. of Kathryn Ann Holmes 95:15–96:21, Doc. No. 118-2.) Relevant portions of Ms. Holmes' testimony reads:

> Q: Did you identify what company was employed to do those background checks or who would have been employed to do those background checks?"
> A: No.
> Q: So you didn't ask about that? You didn't investigate that?
> A: No. I asked about it, and I investigated it, but I do not have an answer to your question.
> Q: So was a background check performed?
> A: I do not know.
> Q: Was there a company, during that time frame, that was employed by the college that performed the actual background check?
> A: I do not know.
> Q: So nobody had this knowledge?
> A: What I can tell you is that [background checks were] standard practice and that that practice—to my knowledge, that practice would have been followed by whomever was in the position at the time.
> Q: But you don't actually know whether a background check was actually performed; is that correct?
> A: I do not know. I know what our practice was. It is my understanding and belief that the practice was followed. . . . but I don't have a person or document that [] I can point to.
> Q: So who did you talk to about that?
> A: I talked to the Provost . . . who referred me to David Perry. I talked to David Perry. David Perry did . . . a search, and then we talked again."

(Id.)

[57] (Mot. 2, Doc. No. 117.)

11

failed to do so, this discovery dispute was not fully developed. For instance, it is apparent the parties disagree as to whether the Westminster Defendants violated their discovery obligations or whether they simply lacked responsive documents or information.

As noted below, sanctions are also unwarranted where Ms. Rains failed to establish the Westminster Defendants had a duty to preserve the background check.

    a. *Duty to Preserve*

Spoliation is only at issue where the offending party has a duty to preserve the evidence.[58] And whether a party has a duty to preserve depends on the facts of each case.[59] "[I]n most cases, the duty to preserve evidence is triggered by the filing of a lawsuit. However, the obligation to preserve evidence may arise [] earlier if a party has notice that future litigation is likely."[60] Nevertheless, "[f]or future litigation to be considered imminent, there must be more than a mere possibility of litigation."[61]

Ms. Rains has failed to establish the Westminster Defendants were under any duty to preserve a background check performed in 2013. First, where Ms. Rains did not file suit against the Westminster Defendants until June 2020, their duty to preserve had not yet been triggered by the filing of a lawsuit. Second, any background check would have been conducted in 2013 at the time of Ms. Rains' hiring. There is no evidence indicating the Westminster Defendants had any reason to believe a lawsuit involving Ms. Rains—a newly hired faculty member—was imminent

---

[58] *See Xyngular Corp.*, 200 F. Supp. 3d at 1309.

[59] *See Grabenstein v. Arrow Elecs.*, Inc., No. 10-cv-02348-MSK-KLM, 2012 U.S. Dist. LEXIS 56204, at *10 (D. Colo. Apr. 23, 2021) (unpublished).

[60] *Velocity Press, Inc. v. KeyBank, N.A.*, No. 2:09-CV-520, 2011 U.S. Dist. LEXIS 45249, at *6 (D. Utah Apr. 26, 2011) (unpublished).

[61] *Id.* (internal quotation marks omitted).

at that time. For these reasons, Ms. Rains has failed to establish the Westminster Defendants were under a duty to preserve her background check, sanctions are not warranted, and no further analysis is required.

3. <u>Dr. Badenhausen's Email Communications Regarding the Investigation Against Ms. Rains</u>

Next, Ms. Rains contends the Westminster Defendants are concealing "communications, including emails, about the investigation and termination" which Dr. Badenhausen allegedly possessed before August 22, 2018, and that this concealment constitutes spoliation.[62] Where Ms. Rains alleges concealment, her argument would be better framed as a motion to compel for failing to produce evidence than a motion seeking sanctions for spoliation. However, because Ms. Rains did not file a motion to compel, this dispute was not fully developed, and sanctions are unwarranted.

Moreover, Ms. Rains failed to establish the Westminster Defendants had a duty to preserve communications regarding any investigation before August 22, 2018, as explained below.

    *a. Duty to Preserve*

Ms. Rains provides no argument or evidence demonstrating the Westminster Defendants were on notice of imminent litigation before August 22, 2018. After all, she did not file suit until June 2020. And Ms. Rains has provided no legal authority supporting the premise that every organization is on notice of imminent litigation every time it investigates or considers firing an employee. Where Ms. Rains has failed to establish the Westminster Defendants had a duty to

---

[62] (Mot. 2, Doc. No. 117.)

preserve email communications pertaining to any investigation as of August 22, 2018, there can be no finding of spoliation and no further analysis is required.

4. <u>Emails and Notes from Bias Reports</u>

Lastly, Ms. Rains alleges Julie Freestone (Westminster's human resources director)[63] "testified that [Westminster] College maintained all bias reports and the details related to behavior reported" in a database.[64] These reports were reviewed by the Title IX coordinator, whose reviews were then sent to Westminster's bias committee.[65] Relying on this testimony, Ms. Rains contends "[n]o emails or notes from the database were produced" during discovery.[66]

Again, this argument amounts to an assertion that the Westminster Defendants failed to produce evidence. Ms. Rains should have raised this claim in a motion to compel rather than a motion seeking sanctions. Where she failed to do so, this dispute was not fully developed, and sanctions are unwarranted. In addition, Ms. Rains makes no argument and offers no evidence regarding any duty to preserve this evidence. Accordingly, Ms. Rains has not met her burden, there can be no finding of spoliation, and no further analysis is required.

## CONCLUSION

Ms. Rains' arguments for sanctions fail. Ms. Rains has failed to establish spoliation occurred. Instead, Ms. Rains' allegations regarding spoliation constitute little more than undeveloped discovery disputes, which Ms. Rains has not timely raised. Moreover, Ms. Rains has not met her burden of establishing the Westminster Defendants had a duty to preserve

---

[63] (*See* Second Am. Compl. ¶ 45, Doc. No. 62.)

[64] (Mot. 3, Doc. No. 117.)

[65] (*Id.*)

[66] (*Id.*)

evidence for any of the alleged incidents of spoliation—and she has failed to demonstrate the Westminster Defendants engaged in sanctionable conduct. Accordingly, Ms. Rains' motion[67] is denied.

DATED this 11th day of April, 2023

BY THE COURT:

*Daphne A. Oberg*
Daphne A. Oberg
United States Magistrate Judge

---

[67] (Doc. No. 117.)